**IN THE UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

CENTENNIAL BANK, an Arkansas
state-chartered bank,

    Plaintiff,

v.                                                          Case No.: 6:20-cv-2237

FELIPE VAZQUEZ f/k/a FELIPE
JAVIER RIVERO, an individual,

    Defendant.
_____/

## COMPLAINT

Plaintiff, Centennial Bank, an Arkansas state-chartered bank ("Centennial"), by and through its undersigned counsel, files this complaint for breach of contract against Felipe Vazquez f/ka Felipe Javier Rivero (the "Borrower"), and alleges as follows:

### I.  PARTIES, JURISDICTION, AND VENUE

1. Centennial is an Arkansas state-chartered bank doing business in the Middle District of Florida, and has its principal place of business in Conway, Arkansas. Centennial is duly authorized to conduct business in the State of Florida.

2. The Borrower is a citizen of Florida, doing business in the Middle District of Florida, residing in Osceola, County, Florida.

3. Pursuant to 28 U.S.C. §§ 1331 and 1332, and other applicable law, jurisdiction over this cause exists in the Middle District of Florida.

4. Pursuant to 28 U.S.C. § 1391(a), venue is proper in the Middle District of Florida.

5. As to each cause of action set forth in this complaint (this "Complaint"), this is an action wherein the amount in controversy exceeds $75,000, exclusive of interest, costs, and attorneys' fees.

6. With respect to each cause of action set forth in this Complaint, this is an action to recover damages pursuant to certain agreements executed, delivered, and/or defaulted upon in the Middle District of Florida.

7. With respect to each count set forth in this Complaint, all requirements and conditions precedent to the bringing of this action have been satisfied, performed, or waived.

8. With respect to each cause of action set forth in this Complaint, Centennial has retained the undersigned law firm as counsel of record herein, and has agreed to compensate and reimburse it for services rendered and costs incurred in connection with the enforcement of its rights and remedies as more fully set forth below.

## II. BACKGROUND ALLEGATIONS

### A. The Player's Contract and Professional Baseball Career

9. The Borrower is a Venezuelan-native professional baseball player who made his first appearance in "Major League Baseball" ("MLB"), on April 17, 2015 on behalf of the Washington Nationals. The MLB is an American professional baseball organization consisting of thirty (30) teams across the United States.

10. On January 16, 2018, and prior to the start of the 2018 regular season, the Borrower entered into a "Major League Uniform Player's Contract" (the "Player's Contract")[1] with the Pittsburgh Associates L.P. d/b/a The Pittsburgh Baseball Club (the "Team"), a copy of which is attached hereto as Exhibit "A."

11. The Team, more widely known as the Pittsburgh Pirates, is one of the thirty (30) American professional baseball teams that compete in MLB as a member club of the National League.

---

[1] It is noted that the Player's Contract identifies the Borrower as Felipe Javier Rivero; however, pursuant to the "Final Judgment of Change of Name (Adult)" in Case No. 2018-DR-000341, issued by the Ninth Judicial Circuit in and for Oscelo County, Florida, dated March 26, 2018, the Borrower legally changed his name to Felipe Vazquez as of that date.

2

12. Pursuant to the terms of the Player's Contract, the Borrower was to be compensated $19,000,000 over a four (4) year period (the "Contract Term") commencing on January 16, 2018 and continuing through the conclusion of the 2021 championship series (the "Contract Salary"). The Player's Contract also provides the Team with two (2) additional club options (the "Options") pursuant to which the Team can extend the Contract Term up to an additional two (2) years if both Options are exercised. In these regards, the Borrower is to receive a base salary of $10,000,000 for each year that the Team elects to exercise one or both of the Options, for an aggregate additional salary of $20,000,000 (the "Maximum Option Salary").

13. In addition to the Contract Salary and Maximum Option Salary, the Player's Contract entitled the Borrower to a signing bonus equal to $2,000,000 (the "Signing Bonus"), to be paid to the Borrower within thirty (30) days of the Player's Contract having been approved by the Office of the Commissioner of Baseball (the "Baseball Commissioner").

14. The Player's Contract further provides the Borrower with an opportunity to receive what is defined therein as additional "Award Bonuses," which are to be awarded to the Borrower upon receipt of certain individual accolades during each of the championship series covered under the Contract Term. These potential Award Bonuses include:

| | |
|---|---|
| Reliever of the Year: | $325,000 – First place;<br>$150,000 – Second place;<br>$100,000 – Third place |
| Word Series MVP: | $50,000 |
| LCS MVP: | $25,000 |
| DS MVP: | $25,000 |
| Rawlings Gold Glove Winner: | $25,000 |
| Selection or Election to annual Major League All-Star Game: | $50,000 |

Accordingly, the maximum amount the Borrower may be awarded in Award Bonuses is capped at $500,000 for each championship season covered under the Contract Term.

15. On July 8, 2018, the Borrower was selected to the 2018 All-Star Game, as a relief

3

pitcher for the National League. Not only did this mark the Borrower's first All-Star appearance, but it further entitled the Borrower to an Award Bonus of $50,000. The very next year, on July 6, 2019, the Borrower was again selected to the 2019 All-Star Game, thereby entitling him to another $50,000 Award Bonus under the Player's Contract.

**B.     The Borrower and Lender's Lending Relationship**

16.     During March 2019, the Borrower, together with his broker, Sure Sports, LLC (the "Broker"), approached Centennial for purposes of soliciting a loan in the amount of $3,000,000, for purposes of "future investment opportunities" of the Borrower. The relationship between the Borrower and the Broker is evidenced by a "Fee Agreement" (the "Fee Agreement"), containing terms and conditions for the Broker's efforts in providing underwriting and other services more fully described therein.

17.     Based upon representations and assurances made by both the Borrower and Broker, Centennial approved the Borrower for a loan in the amount of $3,000,000 (the "Loan"). The Loan is evidenced by a "Promissory Note" (the "Note"), dated March 21, 2019, and in the original principal amount of $3,000,000. A copy of the Note is attached hereto as Exhibit "B."

18.     As agreed between Centennial and the Borrower, the Loan was secured by a pledge of the rights of the Borrower under the Player's Contract. Centennial's in rem rights are evidenced by a "Secured Financial Transaction and Security Agreement" (the "Security Agreement"), a copy of which is attached hereto as Exhibit "C."

19.     Pursuant to the terms of the Security Agreement, the Borrower granted Centennial a perfected security interest in the Signing Bonus, Award Bonuses, Contract Salary, Maximum Option Salary, and any other amounts due and owing to the Borrower under the Player's Contract (collectively, the "Pledged Payments"). Moreover, the Security Agreement required, and the Borrower agreed, to have all of the Pledged Payments electronically deposited directly into a controlled deposit account opened with Centennial (the "Designated Account"), in order to secure

prompt and sufficient monthly payments under the Loan.

20. As further evidence of Centennial's reliance upon the Player's Contract and Security Agreement as a source of repayment, the term of the Note is directly subject to the term of the Player's Contract. Accordingly, the initial term of the Note was to mature on the earlier of: (i) October 1, 2021; or (ii) if the Player's Contract is terminated, within five (5) calendar days after the [t]ermination – as defined under the Player's Contract – is effective pursuant to the Player's Contract.

21. Consistent with the terms of the Note and Security Agreement, the Borrower executed in favor of Centennial a "Florida Agreement to Waive Garnishment Protection" (the "Garnishment Waiver"), a copy of which is attached hereto as Exhibit "D." In executing the Garnishment Waiver, the Borrower agreed to waive protection from garnishment otherwise potentially afforded under Florida law.

22. With Centennial in receipt of the Note, Security Agreement, and Garnishment Waiver, Centennial advanced all funds as required under the Note in accordance with the terms of the same.

C. **The Borrower's Criminal Proceedings and Suspension from Baseball**

23. On September 17, 2019, a mere six (6) months after Centennial entered into its lending relationship with the Borrower as evidenced by Note and Security Agreement, the Borrower was arrested by Pennsylvania State Police and taken into custody on a felony warrant out of Lee County, Florida, on charges of statutory sexual assault, unlawful contact with a minor, corruption of minors and indecent assault of a person less than sixteen (16) years old.

24. In light of the extremely serious charges brought against the Borrower, the Borrower was immediately placed on administrative leave by the Baseball Commissioner. The Team further placed the Borrower on the restricted list shortly after he was arrested, pursuant to the "Joint Domestic Violence, Sexual Assault, and Child Abuse Policy" (the "Joint MLB/MLBPA

Policy"). While placed on either administrative leave or the restricted list, the Borrower is precluded from participating in any Team-events, including all baseball games, tournaments, championship series, and spring training events where tickets are sold.

25. Two (2) months later, on November 19, 2019, an additional twenty (21) felony charges, including ten (10) counts of unlawful sexual contact with a minor, ten (10) counts of child pornography, and one (1) count of corruption of a minor, were brought against the Borrower.[2]

26. At this time, the Borrower has been denied bail and remains in custody at the Westmoreland County Prison in Westmoreland County, Pennsylvania awaiting trial. In light of the Borrower's present detainment and ongoing criminal proceedings, the Borrower remains on the Team's restricted list and otherwise suspended from MLB.

**D.    The Borrower's Breaches of the Note and Security Agreement**

27. The Borrower's suspension by MLB and the Team constitutes a material change in the Borrower's Player's Contract triggering a default under the Security Agreement (the "Suspension Default") and causing all payments under the Note and any payment due under the Security Agreement to immediately be due and payable by the Borrower to Centennial.

28. In addition to the Suspension Default, on April 1, 2020, the Borrower again defaulted under the terms and conditions of the Note by failing to make the payment then due and owing (the "Payment Default"), and no further payments have been made or received by Centennial on the Note.

29. On November 23, 2020, Centennial sent a default notice (the "Borrower Default Notice") to the Borrower providing notice of the Suspension Default and Payment Default, the defaults known to Centennial at the time, and making a formal demand for full and immediate

---

[2] See Commonwealth of Pennsylvania vs. Felipe Vazquez, Docket Number CP-65-MD-0000770-2019; Commonwealth of Pennsylvania vs. Felipe Vazquez, Docket Number CP-65-CR-0005098-2019; and Commonwealth of Pennsylvania vs. Felipe Vazquez, Docket Number CP-65-CR-0005102-2019 (collectively, the "Pennsylvania Criminal Proceedings").

payment of the Note in the amount equal to the Payoff Demand Amount, as further defined below. No response was received by Centennial and the Borrower has failed to make the Payoff Demand Amount as of the date of filing this Complaint. A copy of the Borrower Default Notice is attached hereto as Exhibit "E."

30. As of November 13, 2020, the Loan was in the aggregate amount of $2,723,857.94 (the "Payoff Demand Amount"), inclusive of principal, accrued interest and late fees, itemized as follows:

| | |
|---|---|
| Principal: | $ 2,552,646.82 |
| Interest (as of 11/13/20 at $443.17 per diem): | $    113,894.14 |
| Late Charge: | $      57,316.98 |
| **Total Amount Due:** | **$ 2,723,857.94** |

Interest has since continued to accrue on the principal amount of the Loan pursuant to the Note and Security Agreement. The foregoing computation of interest is based upon the non-default contract rate set forth in the Note and Security Agreement; however, Centennial reserves the right to seek and recover interest at the highest rate allowed pursuant to the Note and Security Agreement, Florida Statutes § 687.071, and other applicable law.

31. The Borrower is additionally liable to Centennial for attorneys' fees, court costs, and related expenses incurred by Centennial in connection with its efforts herein, or otherwise, in prosecuting and enforcing its right sand remedies pursuant to the Note and Security Agreement, including attorneys' fees and costs paid by Centennial to its undersigned counsel as compensation and reimbursement for its efforts to enforce the Note and Security Agreement.

## COUNT I:  BREACH OF CONTRACT AGAINST BORROWER

32. This is an action for damages against the Borrower resulting from its default pursuant to the terms of the Note and Security Agreement.

33. Centennial realleges and reincorporates paragraphs 1 through 31 of this Complaint as though fully set forth herein.

34. The Note and Security Agreement are valid, enforceable contracts.

35. The Borrower has breached the Note and Security Agreement and is in default thereunder as a result of his failure to replay the obligation outstanding under the Note in full as required by the Note and Security Agreement.

36. The Borrower has breached the Note and Security Agreement and is in default thereunder as a result of his failure to comply with his obligations thereunder, which failures constitute specified events of default.

37. The Borrower has breached the Note and Security Agreement by causing a material change in his Player's Contract to occur.

38. As a result of the Borrower's failure to make payments as required under the Note and Security Agreement, as well as other events of default more fully described above, the entire remaining principal balance due under the Loan in the amount of $2,552,646.82, together with accrued and unpaid interest in the amount of $113,894.14, as of November 13, 2020, and late charges in the amount of $57,316.98, for an aggregate amount of $2,723,857.94, together with prejudgment interest, attorneys' fees and other costs of collection, is due and owing to Centennial under the Note and Security Agreement.

39. Centennial has been damaged by the Borrower's breach.

40. Attorneys' fees and court costs are recoverable pursuant to the Note and Security Agreement as a component of the Loan.

41. Centennial owns and holds the originals of the Loan Documents, to the extent required by law to bring these causes of action.

WHEREFORE, Centennial requests judgment for damages against the Borrower in the full amount of the Loan, plus interest, court costs, and reasonable attorneys' fees recoverable pursuant to the Note and Security Agreement, and for such other and further relief this Court deems just and equitable.

## COUNT II:  SPECIFIC PERFORMANCE OF SECURITY AGREEMENT

42. This is an action for specific performance under the Security Agreement and against the Borrower as result of the Borrower's breaches of the Security Agreement.

43. Centennial realleges and reincorporates paragraphs 1 through 31 of this Complaint as though fully set forth herein.

44. Pursuant to the terms of the Security Agreement, Centennial was granted a perfected security interest in the Pledged Payments owed to the Borrower under the Player's Contract.

45. At all times relevant hereto, the Security Agreement required the Borrower to cause all Pledged Payments due under the Player's Contract to be electronically deposited directly into the Designated Account at Centennial.

46. Under the Security Agreement, the Borrower has expressly authorized the Team to electronically deposit into the Designated Account the Pledged Payments that would otherwise be paid directly to the Borrower by the Team under the Player's Contract until such time as Centennial has received full payment under the terms of the Loan.

47. Under the Security Agreement, the Borrower has further authorized Centennial to directly provide the Team with the Borrower's financial institution information and account and routing numbers, as well as any other relevant instructions for the Designated Account, in order to

facilitate the Team's compliance with the Security Agreement to directly deposit the Pledged Payments into the Designated Account.

48. As of the date of filing this Complaint, the Loan remains outstanding.

49. As of the date of filing this Complaint, Centennial has ceased to receive deposits from the Borrower or on the Borrower's behalf into the Designated Account.

50. Centennial has been damaged based upon the conduct of both the Borrower and the Team in refusing to comply with the express terms of the Security Agreement.

WHEREFORE, Centennial requests judgment in its favor and against the Borrower, awarding specific performance under the Security Agreement requiring the Borrower to comply with all terms thereunder, including the deposit of all monies paid or to be paid to the Borrower to be remitted directly into the Designated Account, together with court costs and reasonable attorneys' fees recoverable pursuant to the Security Agreement, and such other and further relief this Court deems just and equitable.

Dated this 8th day of December, 2020.

/s/ Andrew J. Ghekas
**JOHN A. ANTHONY, ESQUIRE**
Florida Bar Number:  0731013
janthony@anthonyandpartners.com
**ANDREW J. GHEKAS, ESQUIRE**
Florida Bar Number:  0119169
aghekas@anthonyandpartners.com
ANTHONY & PARTNERS, LLC
100 South Ashley Drive, Suite 1600
Tampa, Florida  33602
Telephone:  (813) 273-5616
Attorneys for Centennial